RICHARD A. MOTLEY

*v.*

HENRY I. DARLING et al.

[Decided January 15th, 1918.]

1. An endorser of notes, given pursuant to an agreement of sale, who knows that the payee is relying on such endorsement, is estopped from denying privity of contract between himself and the payee.

2. A bill of sale of personalty conveys merely the seller's right, title and interest in the property described therein. ·

3. Where the endorser of the two notes endorsed a third in consideration of the destruction of the other two, the circumstances in this case were sufficient to put·him on his inquiry as to whether the notes destroyed were or were not forgeries.

4. Being so put on his inquiry, he is, under the circumstances, liable with the buyer to the seller for the amount of the destroyed notes with interest, as they were forgeries.

On bill for a discovery, &c.   Heard on bill, answer, replication and proofs taken in open court.

*Mr. Joseph Anderson, Sr.,* for the complainant.

*Mr. George J. McEwan* and *Mr. Charles E. S. Simpson,* for the defendant Henry I. Darling.

LEWIS, V. C.

The bill in this cause was dismissed for want of equity and because complainant had an adequate remedy at law.   An appeal

was taken to the court of errors and appeals, and the decree of this court was reversed. *Motley* v. *Darling, 86 N. J. Eq. 185.*

The bill is for a discovery as to the execution of two notes which were to have been signed by defendant Flynn, and endorsed by defendant Darling, and were to be delivered to the complainant as the consideration for the sale and delivery by him, the complainant, of certain personal property, but which notes were not so delivered, and in view of the fraudulent destruction of the notes by the defendants, or one of them, for a decree establishing the same and directing the payment of the moneys payable thereunder.

The essential parts of the bill are sufficiently enumerated in the opinion rendered by the court of errors and appeals. The bill, however, alleged that the contract for the sale of the garage was between Motley as vendor, and Darling as vendee. The proofs, however, establish the fact that Flynn was the vendee. But I can draw no other conclusion from the evidence than that Motley was induced to part with his property upon the understanding that Darling would pay if Flynn did not. The evidence proves that Darling was trying to secure himself from impending loss. Darling was present at the conference when the bill of sale and the assignment of the lease from Motley to Flynn, and the notes from Flynn, endorsed by Darling, and the chattel mortgage from Flynn to Darling to secure Darling for his endorsements were drawn. He admits that he received notice that an outsider had bought one of the notes, and yet when Flynn came to him and offered to destroy both the notes on consideration that Darling would endorse a note for $500, he agreed, and did so, and Flynn thereupon destroyed the notes made to Motley for $700 and for $500. Darling says he thought it was "awfully strange." His counsel, however, was present at the time, and he does not seem to have suspected that Flynn had given forged notes to Motley, so that if a skillful lawyer did not suspect the trick that Flynn had perpetrated on Motley, it is fair to assume that Mr. Darling was not guilty of any willful wrongdoing.

I am unable to reach any other conclusion than that there

was a privity of contract between Motley and Darling, however; in any event, Darling's action in endorsing the notes, in pursuance of this agreement between all the parties, in Motley's presence, and delivering them to Flynn to be delivered to Motley, knowing that Motley was relying thereon, would estop Darling from denying the privity of contract. The chattel mortgage to Darling was made at the same time and was a further step in the carrying out of the agreement between all the parties, and, of course, furnished the consideration to Darling for his endorsements.

Immediately after Flynn had been placed in possession of the garage, the Bocks went into bankruptcy, and the receiver in bankruptcy held that the bill of sale given by the Bocks to Motley was only an equitable mortgage. The bill of sale from Motley to Flynn, which was the consideration for the notes, merely conveyed the right, title and interest of Motley to Flynn, and Darling, who had taken a chattel mortgage from Flynn at the time he endorsed the notes made by Flynn to Motley, may be assumed to have been very much perturbed when he found out the condition of affairs. Flynn, however, bought in the title from the trustee in bankruptcy.

A decree *pro confesso* has been taken against Flynn, but he is not worth anything.

Mr. Darling seems to be a rather unsophisticated man, and I have no idea that he meant to be dishonest in any way when he endorsed the note for Mr. Flynn for $500 in consideration of the destruction by Mr. Flynn of the two notes in suit. He made a mistake in backing Mr. Flynn, and there is no one to blame but himself. There can be no doubt that Darling had sufficient notice to put him on inquiry.

Darling says that when Flynn destroyed the note in his presence, he, Darling, "thought it was awfully strange." He knew that Motley had delivered the conveyance and possession of the property to Flynn, and he obviously knew that Motley had not received the two notes which it had been agreed he should receive. He had no business, therefore, to participate in the destruction of these notes without making inquiry.

If the notes were still in existence, there can be no doubt that a decree would lie requiring the delivery of these two notes to Motley, subject to an adjustment being made by Motley for the amount which Flynn was required to pay to the · trustee in bankruptcy to perfect the title which Motley had agreed to deliver to Flynn. The notes are not in existence, however, and inasmuch as the due dates thereof are long since past, it would be idle that new notes should be made to replace those which have been improperly destroyed.

If, therefore, specific performance could be decreed in case the notes were in existence, surely Darling could not avoid his obligation to pay by securing their destruction. Such a doctrine would be inequitable. He endorsed a note for $500 in order to have them destroyed, but,. to my mind, that does not help him to avoid his obligation.

Darling's contract, by his endorsements, was to pay these notes if they were dishonored by Flynn at maturity. Darling, of course, was entitled to notice of such dishonor if it took place. Darling in fact did have notice that the amounts of these notes were not paid by Flynn to Motley at maturity, because it appears that he received notice of the protest of the two forged notes which Flynn gave to Motley instead of the originals.

I will, therefore, advise a decree against Flynn and Darling for the amount of the notes plus interest, less the amount paid by Flynn to the trustee in bankruptcy to perfect title, plus interest from the date of such payment, provided proof as to the amount so paid by Flynn be made before me, on notice, within a reasonable time, otherwise the decree will be for the full amount of the notes and interest.